# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MILTON J. SMITH, JR. #280378
    Plaintiff                                      :

           v.                            :      CIVIL ACTION NO. JFM-11-2214

SGT. SIMPKINS, et al.,                     :
    Defendants

**MEMORANDUM**

**Background**

Plaintiff Milton J. Smith, Jr. ("Smith"), a prisoner currently incarcerated at Baltimore City Correctional Center ("BCCC"), filed this action under 42 U.S.C. §1983 seeking money damages[1] and alleging that while housed at Metropolitan Transition Center ("MTC") he was physically and verbally assaulted on May 17, 2011 by Sgt. Simpkins. Smith further claimed that on May 26, 2011, Simpkins verbally harassed him and told other prisoners in the vicinity that Smith was a "snitcher" who provided information concerning phones and tobacco coming into the prison. Finally, Smith complained that Warden Hejirika delayed his response to Smith's Administrative Remedy Procedure ("ARP") requests.[2] Defendants have filed a motion to dismiss or for summary judgment.

**Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept[s] the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the

---

[1] Smith also sought injunctive relief mandating transfer to another facility, citing safety concerns after Simpkins allegedly called him a "snitcher." ECF No. 12 at 3. Smith has been transferred to BCCC, rendering moot his claim for injunctive relief.

[2] Smith claims no injury as a result of the delay, and it appears the claims raised in Smith's ARPs were investigated. The failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. *See United States v. Caceres,* 440 U.S. 741 (1978); *see also Riccio v. County of Fairfax, Virginia,* 907 F.2d 1459, 1469 (4th Cir. 1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) (state's failure to follow its own rules or regulations, alone, does not establish a constitutional violation); *Keeler v. Pea,* 782 F.Supp. 42, 44 (D. S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

claims, the court is not bound by plaintiff's legal conclusions." *Takacs v. Fiore*, 473 F.Supp.2d 647, 651 (D. Md. 2007).

Fed. R. Civ. P. 56(a) provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

The complaint raises important issues under the Eighth Amendment. The court, however, cannot consider the merits of a key issue in the case relating to whether defendant Simpkins physically and verbally assaulted Smith on May 17, 2011. Instead, the court shall dismiss that portion of the case because Smith failed to exhaust available administrative remedies, a deficiency which defendants have asserted as an affirmative defense to suit. *See* ECF No. 9, Exhibits 1-7, and Exhibit 8, Declaration of Scott S. Oakley, Executive Director, Inmate Grievance Office ("IGO").

The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to Smith's claims, which must be dismissed unless Smith can show that he has satisfied the administrative exhaustion requirement under the PLRA or that the correctional defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id.* at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated within thirty calendar days of the incident (or of the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the ARP process provided by the Division of Correction to its prisoners.  If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction.  If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the

IGO.  *See* Division of Correction Directive 185-002.VI.L-N; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 10-209.  Smith pursued an ARP complaint about the May 17, 2011 incident to the Commissioner.[3]  ECF No. 12, Memorandum at 2-3.  Smith did not, however, complete administrative review by filing an appeal to the IGO.  ECF No. 9, Exhibit 8.

The remaining claim concerning Simpkins' alleged statement that Smith was a "snitcher" must be examined on its merits, as it was fully exhausted through the ARP process.[4]  In essence, the claim goes to the core of whether Simpkins' alleged conduct placed Smith in danger at the hands of fellow prisoners.  In order to prevail on an Eighth Amendment claim of failure to protect from violence, Smith must establish that Simpkins exhibited deliberate or callous indifference to a specific known risk of harm.  *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).

> "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."

*Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).  "[T]o survive summary judgment, [plaintiff] must come forward with evidence from which it can be inferred that the defendants…knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the

---

[3] That ARP, MTC-0549-11, was denied by defendant Hejirika on July 12, 2011.  ECF No. 9, Exhibit 1.  In any event, there is no evidence that Smith suffered actual physical injury as a result of any altercation with Simpkins on May 17, 2011.

[4] After the Warden denied ARP No. MTC-0594-11, the Commissioner investigated the matter and found that Simpkins' statements may have been overheard by other prisoners. The Commissioner did not find any evidence of harassment,  nor evidence that Smith had been harmed as a result of the incident. Contrary to defendants' assertion, the issue was fully exhausted.  In finding the ARP appeal meritorious in part, the Commissioner indicated "[n]o further action will be taken through the ARP process."  ECF No. 12, ARP Appeal MTC-0594-11, response dated October 31, 2011.

remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846

The Commissioner investigated the issue, concluded that Simpkins did call Smith a "snitcher," and found that the statements "may" have been overheard by other prisoners. The Commissioner did not conclude that the incident demonstrated "harassment" and indicated that the investigation found Smith had suffered "no ill effects" stemming from the incident. This court concurs. While the conduct alleged was unprofessional, it appears to have been a one-time incident that did not create an intolerable risk of harm. Smith has not been injured and is not entitled to damages as a result of Simpkins' statement.

Defendants are entitled to summary judgment in this case. A separate Order shall be entered in accordance with this Memorandum.


Date:   March 9, 2012                    /s/
                                         J. Frederick Motz
                                         United States District Judge